IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02406-PAB-KLM

FRANKY L. SESSION,

     Plaintiff,

v.

CLEMENTS, Deputy Sheriff, in his official and individual capacities,
ANDREWS, Deputy Sheriff, in his official and individual capacities,
ROMERO, Deputy Sheriff Captain, in his official and individual capacities, and
JORDAN, Deputy Sheriff Sergeant, in his official and individual capacities,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion for Leave to File a Fourth**

**Amended Prisoner Complaint and Service Upon Defendants' Attorneys** [#85][1] (the

"Motion").  Defendants filed Responses [#87, #89] in opposition to the Motion.  Plaintiff,

who proceeds in this manner as a pro se litigant,[2] filed a Reply [#99].  The Motion has been

referred to the undersigned for recommendation [#35] pursuant to 28 U.S.C. § 636(b)(1)

_____

[1]  "[#85]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

[2]  The Court must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

and D.C.COLO.LCivR 72.1(c).[3]   The Court has reviewed the Motion, Responses, Reply,

the entire case file, and the applicable law, and is sufficiently advised in the premises.  For

the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#85]

be **GRANTED in part and DENIED in part**.

## I. Background

### A.   Procedural Background

In the Motion, Plaintiff seeks to amend his allegations and add two new claims

against some of the existing Defendants.  *See Proposed Fourth Am. Compl.* [#85-1].  The

Court has discretion to grant a party leave to amend its pleadings.  *Foman v. Davis*, 371

U.S. 178, 182 (1962); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave

when justice so requires.").  "In the absence of any apparent or declared reason – such as

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought

should, as the rules require, be 'freely given.'"  *Id.* (quoting Fed. R. Civ. P. 15(a)(2)).

Potential prejudice to a defendant is the most important factor in considering whether a

plaintiff should be permitted to amend the complaint.  *Minter v. Prime Equip. Co.*, 451 F.3d

1196, 1207 (10th Cir. 2006).  "Courts typically find prejudice only when the [proposed]

amendment unfairly affects the defendants in terms of preparing their defense to [claims

---

[3] A magistrate judge may issue orders on nondispositive motions only.  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir. 1988).  Whether motions to amend are dispositive is an unsettled issue.  *Chavez v. Hatterman*, No. 06-CV-02525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan. 13, 2009) (collecting cases).  When an order on a motion to amend removes or precludes a defense or claim from the case it may be dispositive.  *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002).  In this case, the Court assumes that the issue is dispositive and requires a recommendation.

asserted in the] amendment." *Id.* (quotation omitted).

Defendants primarily argue that the proposed amendments to Plaintiff's Proposed Fourth Amended Complaint are futile. *Responses* [#87, #89]. A motion for leave to amend may be denied on the basis of futility. *Foman*, 371 U.S. at 182. An amendment is futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Innovatier, Inc. v. CardXX, Inc.*, No. 08-cv-00273-PAB-KLM, 2010 WL 148285, at *2 (D. Colo. Jan. 8, 2010) (citing *Bradley v. Val–Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). Defendants argue that each of the claims asserted by Plaintiff fails under the standards set by Fed. R. Civ. P. 12(b)(6), and so the Court examines each claim in turn after reciting material facts from the Proposed Fourth Amended Complaint.

## B.    Factual Background

Plaintiff is presently incarcerated at the Arkansas Valley Correctional Facility but was detained at the Denver Downtown Detention Center during the events underlying this lawsuit. All four Defendants are deputy sheriffs with the Denver Sheriff Department. *Proposed Fourth Am. Compl.* [#85-1] at 2-3. Plaintiff alleges that on March 24, 2013, Defendant Clements removed him "without incident or facility disruption" from 4A, the sex offender unit, to 4D, a 23-hour lock-down segregation unit. *Id.* at 3. Plaintiff asserts that this was done without provocation or wrong-doing. *Id.* Specifically, Plaintiff states that about 6:30 p.m. that day, he had just stepped out of the shower when Defendant Clements came into Room 4A-101 to look around. *Id.* Without saying anything, Defendant Clements quickly left and Plaintiff finished his post-shower activities. *Id.* at 4-5. Later, Defendant Clements approached Plaintiff while he was watching television. *Id.* at 5. He told Plaintiff to stand and to leave 4A with Defendant Andrews. *Id.* Defendant Clements refused to answer Plaintiff's questions as to why he was being removed from 4A. *Id.*

While being transferred, Plaintiff asked Defendant Andrews why he was being removed, but Defendant Andrews only responded that he did not know. *Id.* Plaintiff was not patted down or handcuffed before or during this transfer. *Id.* Upon arrival in 4D, Plaintiff asked Defendant Andrews to pull the incident report and tell him what allegations and charges were being made against him. *Id.* at 5. Defendant Andrews locked Plaintiff in his new cell and left but returned fifteen minutes later to tell Plaintiff there was no incident report or facility charges at that time. *Id.* Defendant Andrews then commanded Plaintiff to remove all clothing. *Id.* When Plaintiff protested, Defendant Andrews "took a couple steps towards him, which scared him and made him uncertain," so Plaintiff submitted to the strip search. *Id.* After removing all of his clothing, Defendant Andrews commanded him "to open his mouth, raise his tongue, lift his testicles, turn around, lift his feet, wiggle his toes, bend over, [and] spread his butt cheeks and cough." *Id.* at 6. After Defendant Andrews left, Defendant Clements came to Plaintiff's new cell. *Id.* at 7. He refused to answer Plaintiff's questions, only telling him, "This is your new home," before leaving. *Id.*

Plaintiff remained in segregation from March 24, 2013, through December 18, 2013. *Id.* at 11. Plaintiff states that Defendants Romero and Jordan were part of the administration review board, but they refused to release Plaintiff from segregation, allegedly because of the sex offender charges pending against Plaintiff. *Id.* at 10-11. On April 24, 2013, Plaintiff "started to experience hearing voices, hallucinations, cognitive dysfunction, uncontrollable jumping, depression, anxiety, appetite loss, sleep disruption, muscle tightening, panic, traumatic re-enactment of being shot at point blank range, continued fear, and paranoia." *Id.* at 12. Plaintiff states that Defendants Romero and Jordan refused to discuss Plaintiff's situation with him during his time in segregation. *Id.* at 13.

As a result of these allegations in the proposed Fourth Amended Complaint, Plaintiff

asserts six claims for relief against Defendants, each in only his individual capacity: (1) a Fourteenth Amendment due process claim against Defendant Clements; (2) a Fourteenth Amendment due process claim against Defendant Andrews; (3) a Fourteenth Amendment due process claim against Defendant Romero; (4) a Fourteenth Amendment due process claim against Defendant Jordan; (5) a Fourteenth Amendment equal protection claim against Defendants Romero and Jordan; and (6) a Fourteenth Amendment "failure to act" claim against Defendants Romero and Jordan. *Id.* at 15-22. Plaintiff seeks compensatory, punitive, and nominal damages against Defendants. *Id.* at 22-25.

Defendants argue that Plaintiff's requested amendments are futile because they have qualified immunity and because he fails to state a claim on which relief may be granted. *Responses* [#87, #89].

## II. Standard

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

### III. Analysis

### A.   Claim Two

Claim Two is the only claim asserted against Defendants Andrews, and he is the only Defendant implicated in this claim.  *See Proposed Fourth Am. Compl.* [#85-1] at 16-17. Plaintiff argues under this Fourteenth Amendment due process claim that Defendant Andrews violated his rights by forcing Plaintiff to submit to a strip search when he was moved from the sex offender unit to segregation.

Defendant Andrews asserts qualified immunity. *Response* [#87] at 5-7. When a defendants raise qualified immunity, the Court employs a two-step process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established." *Id.* The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Here, in its analysis of Defendant Andrews' defense, the Court first looks at whether the right asserted by Plaintiff was clearly established. Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard Cnty.*, 494 F.3d 891, 903 (10th Cir. 2007). The plaintiff bears the burden of proving that the defendants' actions violated

clearly established law.  *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994).  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct . . . .  If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense."  *Saucier*, 533 U.S. at 205.

Plaintiff fails to direct the Court's attention to, and the Court has found no, case which clearly demonstrates that performing a strip search of an inmate when he is moved from one unit of a detention center to a different type of unit in the same detention center is constitutionally impermissible.  Rather, the law appears to support the opposite.  In *Florence v. Board of Chosen Freeholders of Burlington*, 132 S.Ct. 1510 (2012), the Supreme Court rejected a plaintiff's § 1983 claim for unreasonable search and seizure based on a search the plaintiff underwent before entering the jail population.  In the search, plaintiff was required to strip naked and shower.  *Id.* at 1514.  An officer inspected plaintiff's body for markings, wounds, and contraband.  *Id.*  Plaintiff was required to turn with his backside facing the officer, squat, and lift his genitals.  *Id.*  This process is standard procedure for individuals entering the particular correctional facility, regardless of whether there is reasonable suspicion that the individual possesses contraband.  *Id.* at 1514-15.  The Supreme Court ultimately determined that, although the search was intrusive, it was warranted in light of the government's compelling interest in maintaining the security of its correctional facilities and ensuring that contraband is kept out.  *Id.* at 1516-20; *see also Fiselman v. Lewis*, No. 14-cv-00030-RM-CBS, 2015 WL 170551, *8 n.5 (D. Colo. Jan. 13, 2015).  Moreover, the Supreme Court upheld these searches as universal procedures—that is, it did not require officers to have reasonable suspicion that contraband was concealed, nor does the legality of the search depend on the seriousness of the crime

-8-

for which the individual is charged.  *Id.* at 1516-21.

Here, based on this authority, and in the absence of any case clearly establishing Plaintiff's rights as asserted in this claim, the Court cannot find that Defendant Andrews was "plainly incompetent" or "knowingly violate[d] the law," even assuming that he committed a constitutional violation.[4]  *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003).   The Court finds that the law was not clearly established that Defendant Andrews' alleged conduct violated Plaintiff's constitutional rights.  Accordingly, Defendant Andrews is entitled to qualified immunity, and amendment as to the sole claim against him would be futile.

**B.     Claim Five**

Claim Five is asserted against Defendants Romero and Jordan.  *See Proposed Fourth Am. Compl.* [#85-1] at 20-21.  The alleged basis for this Fourteenth Amendment equal protection claim is that Defendants Romero and Jordan violated Plaintiff's rights by failing to accord him the same opportunity to leave segregation as given to other similarly situated pretrial detainees.  Defendants Romero and Jordan assert qualified immunity. *Response* [#87] at 5-7.

"[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause . . . ."  *Whren v. United States*, 517 U.S. 806, 813 (1996).  Here, Plaintiff has failed to adequately allege that similarly situated individuals were

---

[4] The Court also notes that Plaintiff may not bring this due process claim solely on the basis of an administrative regulation because, even if a violation of the regulation occurred, "a failure to adhere to administrative regulations does not equate to a constitutional violation."  *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citation omitted).  "[A]ny [property or liberty] interest must be created by state law by language of an unmistakably mandatory character." *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (citations omitted).  Plaintiff does not assert any applicable state law that "unmistakably" recognizes a property or liberty interest here.  Because a purported violation of an administrative regulation is, alone, insufficient to constitute a violation of a due process interest, Plaintiff's claim also fails on this ground.

treated differently. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "It is this comparative element that distinguishes the Equal Protection Clause from the Due Process Clause." *Jennings*, 383 F.3d at 1213 (citing *Ross v. Moffitt*, 417 U.S. 600, 609 (1974)). "Traditional equal protection law deals with groups unified by the characteristic alleged to be the root of the discrimination." *Jennings*, 383 F.3d at 1213. In contrast, the Tenth Circuit has emphasized that "[l]ooking only at one individual, however, there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive and largely subjective canvassing of all possible relevant factors." *Id.* at 1213-14. "Inevitably, the degree to which others are viewed as similarly situated depends substantially on the facts and context of the case." *Id.* at 1214. "Plaintiffs will have an easier time stating a claim where there are few variables in play and the set of potentially similarly situated individuals is well-defined." *Id.*

To succeed on this claim, therefore, Plaintiff must provide allegations of other similarly situated persons who were in fact treated differently. *Id.* at 1215 (citing *Armstrong*, 517 U.S. at 465-67). Nowhere in the Proposed Fourth Amended Complaint does Plaintiff do so. His vague assertion that other pretrial detainees were afforded the opportunity to leave segregation is insufficient to demonstrate that they were similarly situated to Plaintiff. *See, e.g.*, *Faircloth v. Schwartz*, No. 12-cv-02764-REB-KLM, 2014 WL 4466663, at #15 (D. Colo. Sept. 10, 2014). Therefore, Plaintiff's equal protection claim fails.

Accordingly, Defendants Romero and Jordan are entitled to qualified immunity, and amendment as to this claim would be futile.

## C.    Claim Six

Claim Six is a Fourteenth Amendment claim asserted against Defendants Romero

and Jordan.  *Proposed Fourth Am. Compl.* [#85-1] at 21-22.  The claim is based on Defendants' alleged "failure to act."  *Id.* at 21.

The Fourteenth Amendment does not impose on a state an affirmative obligation to ensure that its citizens are not deprived of life, liberty, or property.  *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  There are, however, two exceptions to this general rule: the "danger creation" theory and the "special relationship" doctrine.  *See generally Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (providing an overview of the danger creation theory and the special relationship doctrine).  Under both exceptions, a state has a constitutional duty to ensure that its citizens are not deprived of life, liberty, or property.  *Id.*

Neither exception is applicable here.  The danger creation theory "applies only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (internal quotation marks omitted) (citing *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)).  Similarly, the special relationship doctrine applies only to "private act[s] of violence by a third party."  *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006).  Plaintiff has not alleged any connection to any "private" acts of violence perpetrated against him.  Thus, this claim must fail.

Accordingly, Defendants Romero and Jordan are entitled to qualified immunity, and amendment as to this claim would be futile.

## D.    Claims One, Three, and Four

Plaintiffs' remaining claims all appear to be Fourteenth Amendment due process claims.  Claim One is asserted against Defendant Clements, Claim Three is asserted against Defendant Romero, and Claim Four is asserted against Defendant Jordan.  Each

asserts qualified immunity as to his respective claim.

At the outset, the Court addresses Defendants' contentions that the Court can examine Plaintiff's grievances in connection with adjudicating these claims. *See Response* [#89] at 6 n.3. Plaintiff did not attach these grievances to his Proposed Fourth Amended Complaint, but Defendants provided them with a Response. *See Exs. A-C* [#89-1, #89-2, #89-3]. Defendants assert that the Court can examine these documents because they are referenced by Plaintiff in the Proposed Fourth Amended Complaint and are central to his claims. *See Response* [#89] at 6 n.3.

Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in her complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

As noted, Defendants assert the third exception as the basis on which the Court may examine Plaintiff's grievances. *See Response* [#89] at 6 n.3. Although Plaintiff refers to his grievances in the Proposed Fourth Amended Complaint, *see, e.g.*, [#85-1] at 11, the Court cannot find that the grievances are central to Plaintiff's claims. Rather, although

Plaintiff mentions them to demonstrate that he pursued multiple avenues to get out of segregation, the grievances are not central to his claims that he was put into and kept in segregation without due process. *See, e.g.*, *Banks v. Katzenmeyer*, No. 13-cv-02599-KLM, 2015 WL 1004298, at *9 (D. Colo. Mar. 4, 2015). Thus, while the grievances may relate to this lawsuit, they are not central to the claims, and thus, the exception Defendants seek to assert is inapplicable here.

The Court next turns to the merits of Plaintiff's claims. Under the due process clause, a pretrial detainee may not be punished prior to a lawful conviction. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1970)). The government may, however, subject those awaiting trial to the conditions and restrictions of incarceration so long as those conditions and restrictions do not amount to punishment. *Id.*

> The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose. If an act by a prison official, such as placing the detainee in segregation, is done with intent to punish, the act constitutes pretrial punishment. Similarly, if a restriction or condition is not reasonably related to a legitimate governmental goal—that is, it is arbitrary or purposeless—the Court may infer that the purpose of the action is punishment. On the other hand, restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are uncomfortable. Ensuring security and order at the institution is a permissible non-punitive objective. Thus, no process is required if a pretrial detainee is placed in segregation not as punishment, but for managerial reasons.

*Meeks v. Koonce*, No. 14-cv-01335-MSK-KLM, 2015 WL 4940993, at *4 (D. Colo. Aug. 20, 2015), *amended in part on other grounds by Meeks v. Koonce*, No. 14-cv-01335-MSK-KLM, 2015 WL 5000731 (D. Colo. Aug. 24, 2015).

-13-

Here, Plaintiff asserts that he was placed in segregation without any notice of the reason for his placement. *See Proposed Fourth Am. Compl.* [#85-1] at 7. He presumes that he was placed there because of the pending criminal charges against him involving the sexual assault of a child. *See id.* at 6-7, 9-10. Thus, he believes that he was punished by being placed and kept in segregation even though he was merely a pretrial detainee. *Id.* at 9-10. Because the analysis of his claims turns on the government's intent with regard to Plaintiff's placement, the reason for which Plaintiff asserts he was never made aware, the Court finds it is permissible to infer from Plaintiff's allegations that the placement was purposeless or impermissibly imposed as punishment. Thus, Plaintiff has stated procedural due process claims by alleging that he was a pretrial detainee who was placed in segregation without notice or a hearing. The Court further finds that Plaintiff's right was clearly established pursuant to the 2005 Tenth Circuit Court of Appeals' holding in *Peoples v. CCA Detention Centers*, 422 F.3d at 1106.

Accordingly, the Court finds that Plaintiff's requested amendments as to Claims One, Three, and Four are not futile and should be permitted.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#85] be **GRANTED in part and DENIED in part**. The Court **recommends** that the Motion be **granted** to the extent that the following claims be allowed to proceed: (1) Claim One against Defendant Clements in his individual capacity; (2) Claim Three against Defendant Romero in his individual capacity; and (3) Claim Four against Defendant Jordan in his individual capacity. The

Court **recommends** that the Motion be **denied** in all other respects.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).


DATED: January 21, 2016

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge