IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02406-PAB-KLM

FRANKY L. SESSION,

        Plaintiff,

v.

CLEMENTS, Deputy Sheriff, in his individual capacity,
ROMERO, Deputy Sheriff Captain, in his individual capacity, and
JORDAN, Deputy Sheriff Sergeant, in his individual capacity,

        Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on Defendants' **Motion for Summary Judgment**

[#249][1] (the "Motion"). Plaintiff, who is proceeding pro se,[2] filed a Response [#268] in

opposition to the Motion, and Defendants filed a Reply [#273]. The Motion has been

referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and

D.C.COLO.LCivR 72.1(c)(3). *See* [#250]. The Court has reviewed the Motion, the

Response, the Reply, the entire case file, and the applicable law and is sufficiently advised

_____

        [1] "[#249]" is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF). This convention is used throughout this Recommendation.

        [2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404
U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the
Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual
allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf."
*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).
In addition, pro se litigants must follow the same procedural rules that govern other litigants.
*Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

-1-

in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS**

that the Motion [#249] be **GRANTED in part and DENIED in part**.

## I. Background[3]

In March 2013, Plaintiff was a pretrial detainee at the Denver Detention Center (the "DDC"). *Decl. of Pl.* [#140] ¶ 4. Plaintiff was housed in Cell Pod 4A, a Special Housing unit reserved for alleged sex offenders. *Id.* On March 24, 2013, Defendant Clements was assigned to work in Cell Pod 4A and contacted the Classification division regarding Plaintiff. *Motion* [#249] at 3; *Response* [#268] at 41. Plaintiff was subsequently moved to Cell Pod 4D, a twenty-three hour lock-down segregation unit. *Response* [#268] ¶¶ 30, 31; *Reply* [#273] ¶¶ 19-21. Plaintiff asserts that this transfer was made purely for punitive reasons, although he had done no wrong, and that he received no notice or hearing before his placement in segregation. *Decl. of Pl.* [#140] ¶ 4. Plaintiff was housed in segregation from March 24, 2013, to December 18, 2013. *Response* [#268] ¶ 37; *Reply* [#273] ¶ 26. During this time he had weekly administrative review meetings with the Administrative Review Board, which included Defendants Jordan and Romero. *Response* [#268] ¶¶ 36, 41; *Reply* [#273] ¶¶ 25, 30.

Plaintiff is now seeking compensatory damages for alleged loss of privileges, quality of life, and adverse effects to his mental and physical health caused by his time in

---

[3] The following summary construes the evidence in the light most favorable to Plaintiff, as the nonmovant. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). To the extent that Plaintiff has not directly disputed Defendants' recitation of the facts, the Court cites to the Motion [#26].

segregation. *Fourth Am. Compl.* [#137] at 12-13. Plaintiff asserts three claims:[4] (1) a Fourteenth Amendment due process claim against Defendant Clements; (2) a Fourteenth Amendment due process claim against Defendant Romero; and (3) a Fourteenth Amendment due process claim against Defendant Jordan. *Fourth Am. Compl.* [#137] at 9-11. Defendants move for entry of summary judgment in their favor on all three claims. *Motion* [#249] at 8, 17.

## II. Standard

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*,

---

[4] Plaintiff originally included six claims against the present Defendants and an additional Defendant, Deputy Sheriff Andrews. *See Fourth Am. Compl.* [#137]. However, Claims Two, Five, and Six were stricken from the Fourth Amended Complaint for failure to comply with a previous order of the Court. *See Recommendation* [#152] at 2; *see also Order* [#167] (adopting *Recommendation* [#152]). Additionally, Defendant Andrews has been dismissed from this lawsuit. *Id.* Plaintiff's current complaint brings claims against the present Defendants solely in their individual capacities. *See Fourth Am. Compl.* [#137] at 1.

477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).  Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.  *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

### III.  Analysis

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. *Motion* [#249] at 8.  The doctrine of qualified immunity "shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant raises qualified immunity on summary judgment, the burden shifts to the plaintiff to satisfy a strict two-part test. *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). First, taking the facts in a light most favorable to the plaintiff, the plaintiff must provide evidence demonstrating that each defendant's actions violated a constitutional or statutory right. *Id.* Second, the plaintiff has the burden of showing that "the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995) (citations omitted)). If the plaintiff does not meet his burden of demonstrating both of these elements, then the defendant is entitled to qualified immunity. *Nelson*, 207 F.3d at 1206.

Here, regarding the first prong of the qualified immunity test, under the due process clause, a pretrial detainee may not be punished prior to a lawful conviction. *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1970)). However, the government may impose certain restrictions and conditions on pretrial detainees so long as the conditions and restrictions do not amount to punishment. *Id.* The government may have a legitimate interest in segregating an individual detainee for non-punitive reasons, such as maintaining the safety and security of the institution. *Id.* Thus, in order to satisfy the first prong, Plaintiff must show that by being moved and held in segregation, Defendants acted with punitive intent. *Bell*, 441 U.S. at 538.

## A. Fourteenth Amendment Claim Against Defendant Clements

Plaintiff maintains that Defendant Clements violated Plaintiff's due process rights by moving him to segregation without a disciplinary write-up or hearing. *See Fourth Am. Compl.* [#137] at 2-3, 9. Plaintiff questions the veracity of Defendant Clements' contention

that he was approached by three inmates who complained about Plaintiff's hygiene, which thereafter led to Plaintiff's transfer to Unit 4D, i.e., the segregation unit. *Response* [#268] at 6. Plaintiff maintains that whether or not this encounter between Defendant Clements and the three inmates occurred is a genuine issue of material fact. *Id.* Plaintiff also maintains that the question of whether Defendant Clements personally made the decision to transfer Plaintiff is a disputed factual issue. *Pl. Statement of Disputed Factual Issues* [#269] ¶¶ 3-4.

Defendants provide evidence that the Classification division made the decision to transfer Plaintiff to segregation "in order to avoid potential conflicts with other inmates" following complaints from three inmates to Defendant Clements regarding Plaintiff's hygiene. *Decl. of Def. Clements, Exhibit B* [#249-2] ¶¶ 4, 7-8; *see also OIC Incident Report, Exhibit C* [#268] at 84. Defendants also provide evidence that there was a history of complaints about Plaintiff's hygiene, specifically that on November 27, 2012, Plaintiff was transferred to Unit 4D, "due to him being unsanitary" and that on March 14, 2013, he was transferred from Unit 4A-201 to Unit 4A-101 due to complaints about his sanitation. *See id.* Further, Defendants provide evidence that Defendant Clements' actions were limited to alerting the Classification division to the complaints from other inmates and helping Plaintiff move out of Cell Pod 4A. *Decl. of Def. Clements, Exhibit B* [#249-2] ¶¶ 7-10. The uncontroverted evidence demonstrates that the actual decision to reclassify Plaintiff was made by the Classification division and was done in order to protect Plaintiff's safety and "maintain institutional security." *Decl. of Def. Clements, Exhibit B* [#249-2] ¶¶ 6, 8; *see also Decl. of Def. Jordan, Exhibit D* [#249-4] ¶ 3 ("The Classification division evaluates and determines the appropriate housing for inmates."); *Decl. of Romero, Exhibit C* [#249-3] ¶

5 ("Staff within the Classification division evaluate and make the decision when to reclassify an inmate and where that inmate will be housed.").

Regarding Defendants' evidence that Defendant Clements' actions were limited to contacting the Classification division regarding complaints about Plaintiff's hygiene and then helping him move units, Plaintiff presents no contradictory evidence that Defendant Clements had a more substantial role. Further, while Plaintiff may question whether the encounter between Defendant Clements and three other detainees occurred, he presents no evidence to support these doubts. *See Bones*, 366 F.3d at 875 ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.").

Additionally, reading the record in the light most favorable to Plaintiff, he presents no evidence to support the contention that Defendant Clements acted with punitive intent when he spoke with the Classification division regarding Plaintiff's housing. *See Bell*, 441 U.S. at 538. While Plaintiff presents the declaration of another inmate at DDC suggesting that Plaintiff "had multiple issues with Officer Clements," he provides no evidence showing any specific instances of "issues" between Plaintiff and Defendant Clements or how these alleged "issues" affected Defendant Clements' communication with the Classification division regarding Plaintiff's housing on March 24, 2013. *See Decl. of Louis Cordova*, *Exhibit F* [#268] at 88. Further, Plaintiff contends, without evidentiary support, that Defendant Clements "repeatedly tryed [sic] to make [Plaintiff] angry, upset, or even getting in my face trying to get me to react or give him a reason to initiate violence towards me," but does not contend or provide evidence that Defendant Clements acted with hostility in connection with Plaintiff's transfer to Unit 4D, i.e., segregation. *See Decl. of Pl., Exhibit A*

[#268] at 67, 69, 71. Rather, a staff report written by Defendant Clements on March 24, 2013, maintains that leading up to Plaintiff's transfer, he was "approached by all three of my Tier Porters informing me that [Plaintiff] was unsanitary," that he then spoke with the Classification division regarding the complaints, and that Plaintiff was subsequently transferred to "avoid conflicts with other inmates." *OIC Staff Report, Exhibit C* [#268] at 84. Simply stated, Plaintiff has failed to present evidence to support his contention that Defendant Clements acted with the intent to punish Plaintiff.

Finally, while Plaintiff contends that Defendant Clements violated his due process rights by not providing him with notice or a hearing, the uncontroverted evidence demonstrates that Plaintiff's transfer was made for managerial reasons, including Plaintiff's safety in part, and thus, Plaintiff was not entitled to a hearing or notice. *See Peoples*, 422 F.3d at 1106 (explaining that "'no process is required if a pretrial detainee is placed in segregation not as punishment but for managerial reasons'") (quoting *Higgs v. Carter*, 286 F.3d 437, 438 (7th Cir. 2002) (internal brackets omitted)).

Plaintiff has not presented evidence showing that Defendant Clements acted with punitive intent and therefore, even taking the facts in a light most favorable to him, has not demonstrated that Defendant Clements violated a constitutional right. *See Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (explaining that a legitimate government purpose for imposing restrictions on pretrial detainees includes those intended to "ensur[e] the safety and order of the facilities where [the government] houses pretrial detainees"). Accordingly, the Court finds that Plaintiff has not met his burden of demonstrating that

Defendant Clements is not entitled to qualified immunity.[5]  *See Nelson*, 207 F.3d at 1206

(stating that, in opposing an assertion of qualified immunity on summary judgment, the

plaintiff has the burden of providing evidence demonstrating that each defendant's actions

violated a constitutional or statutory right).   Accordingly, the Court finds that Defendant

Clements is entitled to qualified immunity and respectfully **recommends** that summary

judgment be entered in favor of Defendant Clements on this claim.

**B.    Fourteenth Amendment Claims Against Defendants Romero and Jordan**

Plaintiff argues that Defendant Romero punished him as a result of Plaintiff's criminal

charges by ignoring or denying Plaintiff's demands to be transferred out of segregation

between March 24, 2013, and December 18, 2013.  *Fourth Am. Compl.* [#137] at 10.

Plaintiff further maintains that Defendant Jordan violated Plaintiff's due process rights by

refusing to transfer Plaintiff out of segregation during the weekly administrative review

meetings.  *Id.* at 10-11.   Defendants Romero and Jordan assert qualified immunity in

response to these claims.  *Motion* [#249] at 8-11, 13-16.

Defendants provide evidence that Plaintiff requested to leave Unit 4D, the unit that

typically houses inmates who are unable to live with other inmates for any reason, and

requested to be placed in general population.  *See Decl. of Def. Romero, Exhibit C* [#249-3]

¶ 12, *see also Decl. of Def. Jordan, Exhibit D* [#249-4] ¶ 7.   However, Defendants also

provide evidence that, due to the nature of Plaintiff's charges, "Plaintiff could not be placed

_____

[5] The Court need not address the second step of the qualified immunity analysis with regard to Defendant Clements.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although determination of qualified immunity involves a two-step process, if the plaintiff fails to address evidence to support either step, no further analysis is required and Defendant is entitled to qualified immunity).

within the general population."[6] *See Decl. of Def. Jordan, Exhibit D* [#249-4] ¶ 7-8; *see also Grievance Form, Exhibit F* [#249-6]; *Decl. of Def. Romero, Exhibit C* [#249-3] ¶ 12.

The Court first addresses Defendants' argument that placing Plaintiff in general population was not a viable option. Prison administrators are entitled to "wide-ranging deference" regarding "the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547-48 ("Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.") (internal quotation marks and citation omitted).

Because the uncontroverted evidence demonstrates that Defendants Romero and Jordan believed that placing Plaintiff in general population could subject him to a heightened risk of assault, the decision to deny Plaintiff's request to be transferred there was in the interest of maintaining institutional safety, despite the result that Plaintiff remained in segregation. *See Peoples*, 422 F.3d at 1106 ("[R]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting."). Plaintiff has not presented any evidence that Defendants' refusal to allow to him to join general population was

---

[6] From February 11, 2013, through February 23, 2013, and for one day on March 1, 2013, Plaintiff was housed in general population. *See Decl. of Def. Jordan, Exhibit J* [#273-1] ¶¶ 4. However, the uncontroverted evidence demonstrates that this housing assignment was a mistake because it was "contrary to [DDC's] procedures prohibiting inmates with sexual assault on a child [sic] charges from being housed within the general population due to their risk of assault." *Id.* ¶5.

punitive in nature rather than in the interest of safety.  Rather, Plaintiff appears to acknowledge the potential safety risks posed by his entering general population by including on one of his grievance forms the statement that he would "sign a waiver releasing the facility of any and all responsibility if anything does happen to me just to go back to general population."  *Grievance Form, Exhibit F* [#249-6].  Accordingly, the uncontroverted evidence demonstrates that Defendants' decision to refuse to allow Plaintiff to enter general population was reasonably related to the legitimate government purpose of maintaining the security of the institution and Plaintiff's safety.

The Court next examines the evidence regarding whether Defendants Romero or Jordan acted with punitive intent in their decisions to keep Plaintiff in segregation rather than return him to Unit 4A.

Regarding the decision by Defendants Romero and Jordan to hold Plaintiff in Unit 4D, Plaintiff contends that they would "walk past his cell door really fast completely ignoring Plaintiff but stop and take the time to discuss the segregation issues with other pretrial detainees/inmate[s]."  However, Plaintiff also acknowledges that both Defendants Romero and Jordan met with him weekly during the administrative review hearings.  *See Decl. of Pl., Exhibit A* [#268] at 77 ("From March 24, 2013 through December 18, 2013, Romero during weekly DSD/DDC administrative review board/hearing personally met with Plaintiff . . . Jordan during weekly administrative review board/hearing personally met with Plaintiff.").  The declarations of the members of the Administrative Review Board, including Defendants Romero and Jordan, support the contention that Plaintiff had weekly administrative review meetings in order to evaluate his continued placement in segregation. *See Decl. of Def. Jordan, Exhibit D* [#249-4] ¶¶ 4-6; *Decl. of Def. Romero, Exhibit C* [#249-

3] ¶¶ 9-11; *Decl. of Gafford, Exhibit E* [#249-5] ¶¶ 3, 7.  Plaintiff presents no evidence to support the contention that Defendants Romero and Jordan refused to discuss Plaintiff's housing placement in order to punish him.  Rather, the undisputed evidence suggests that Defendants reevaluated Plaintiff's placement on a weekly basis.

While the uncontroverted evidence demonstrates that Defendants Romero and Jordan met weekly with Plaintiff to discuss his housing placement, the evidence does not clearly demonstrate whether Defendants' decision to hold Plaintiff in the segregation unit, i.e. Unit 4D, rather than transfer him to a less restrictive unit such as Unit 4A, was punitive in nature.  The uncontroverted evidence demonstrates that Plaintiff's transfer out of Unit 4D on December 18, 2013, was because he finally "agreed to go to 4A," but it is not clear that Plaintiff did not request to go to Unit 4A prior to this date.

Defendants provide evidence that during the weekly administrative review hearings Plaintiff continually refused the option to leave Unit 4D and return to Cell Pod 4A, the Special Housing unit he had been housed in before being transferred on March 24, 2013.  *See Grievance Form, Exhibit F* [#249-6] ("You have been given the opportunity to go to 4A and continually refuse to go."); *see also Decl. of Def. Romero, Exhibit C* [#249-3] ¶¶ 11, 13; *Decl. of Def. Jordan, Exhibit D* [#249-4] ¶ 6 ("During our weekly Administrative Review meetings, Mr. Session continually refused to return to Cell Pod 4A.").  However, Plaintiff provides evidence that "[f]rom March 24, 2013, to December 18, 2013, at every chance and time I seen [sic] Romero or Jordan together or independently, I plead [sic] and begged them to return me to Unit 4A, or any unit of their choosen [sic]."  *Decl. of Pl., Exhibit A* [#268] ¶ 112; *see also Pl.'s Affidavit* [#74-1] ¶ 23 ("[D]uring the very next Denver Administrative Review Board visit to his cell 4D-202-3, he pleaded and begged [Defendant]

Romero and [Defendant] Jordan . . . to return him to 4A 'Sex Offender' general population Unit.").

While the evidence provided by Defendants suggests that Plaintiff refused to be transferred to Unit 4A, insisting instead to be placed in general population, based on the evidence presented by Plaintiff, he appears to use "4A" and "population" interchangeably. For example, Plaintiff defines Unit 4A as "general population for pretrial detainees/convicted inmates charged with alleged sexual crimes." *Decl. of Pl.* [#268] at 76. Plaintiff also states that "on March 4, 2013, he was transferred from 3B 'Open Dorm' *general population* unit to 4A 'Sex offender' *general population* Unit (8) men cell." *Pl.'s Affidavit* [#74-1] ¶ 8 (emphasis added).

The question of whether Plaintiff requested to be transferred to Unit 4A, Special Housing, prior to December 18, 2013, and whether Defendants denied this request is made more unclear based on several grievance forms that Plaintiff filed during his time in Unit 4D, segregation. Plaintiff states in one grievance form that he has "beg and pleaed [sic] to leave 4D and return to population" and that he has "even stated [his] willingness to sign a waiver releasing the facility of any and all responsibility if anything does happen to me just to go back to General population [sic]." *See Grievance Form, Exhibit F* [#249-6]. It is unclear from the substance of this grievance form whether Plaintiff is referring to Unit 4A as "population" or whether he is referring to the "open dorm" general population unit he was temporarily housed in prior to being transferred to segregation. Additionally, Plaintiff contends that on March 24, 2013, he filed a grievance form requesting to be removed from

Unit 4D and specifically requested to be returned to Unit 4A, the Special Housing unit.[7] *Decl. of Pl., Exhibit A* [#268] at 72. The text of the grievance form, however, provides that the specific remedy sought was to "be return [sic] to population and given a fair chance in population." *Exhibit A* [#89-1]. While it is possible that Plaintiff's reference to "population" refers to "open housing" general population, for which Defendants maintain he was ineligible due to the nature of his charges, the evidence presented does not clearly demonstrate that Plaintiff was not asking to be returned to Unit 4A and thus, an issue of fact remains.

Whether Plaintiff requested to leave Unit 4D, segregation, and be transferred to Unit 4A, Special Housing, and whether Defendants denied him that request, is material because such a denial, when viewed in the light most favorable to Plaintiff, would demonstrate punitive intent in holding Plaintiff in Unit 4D, and thus, demonstrate a violation of Plaintiff's constitutional rights as a pretrial detainee. *See Bell*, 441 U.S. at 535. While it may have been an issue of miscommunication or misunderstanding between the parties, the evidence presented does not show conclusively that Defendants' actions in holding Plaintiff in segregation were not intended to punish him. Defendants Romero and Jordan have not shown that there is no issue of material fact regarding whether Plaintiff requested to be returned to Unit 4A, Special Housing, and not just to general population. *See Adler*, 144 F.3d at 670-71 ("The burden is on the movant to show the absence of a genuine issue of material fact.") (internal citation omitted). Accordingly, the Court finds that the evidence

---

[7] Plaintiff refers to the grievance filed on March 24, 2013, as Form (10 91857). *Decl. of Pl., Exhibit A* [#268] at 72. However, the only grievance filed on March 24, 2013, that has been provided in the record appears to be Form (10 91858). *See Exhibit A* [#89-1].

presented demonstrates a factual issue for trial regarding the existence of a constitutional violation.

Because Plaintiff has met his burden on the first step of the qualified immunity inquiry with respect to Defendants Romero and Jordan, *see Nelson*, 207 F.3d at 1206, the Court must proceed to the second step and determine whether the asserted constitutional violation was "clearly established" at the time of the events in question. *See Boles*, 486 F.3d at 1180 (explaining that if "a violation can be shown, the next, sequential step is to ask whether the right was clearly established"); *Chapman v. Fed. Bureau of Prisons*, No. 15-cv-00279-WYD-KLM, 2018 WL 582424, at *3-4 (D. Colo. Jan. 25, 2018) (finding numerous issues of material fact regarding whether a constitutional violation occurred, but proceeding to consider whether the defendants were entitled to qualified immunity on the second prong of the test); *see also Shilling v. Butero*, No.13-cv-02188-KMT, 2015 WL 5244736, at *3 (D. Colo. Sept. 9, 2015) (explaining that the defendants are entitled to qualified immunity unless "both prongs of the inquiry" are satisfied).

The second prong of the qualified immunity test asks whether the law protecting Plaintiff's rights allegedly violated by Defendants was "'clearly established' at the time of the events in question." *See Walker v. City of Orem*, 451 F.3d 1139, 1150 (10th Cir. 2006). A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were so clear that a reasonable official would understand that his actions violated that right. *Id.* at 1151. The question of whether a right is clearly established must be answered "in light of the specific context of the case, not as a broad general proposition." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (citation omitted). In order for the law to be clearly established, "there must be a Supreme Court or

Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011). Plaintiff has the burden of demonstrating "such clearly-established law." *Walker*, 451 F.3d at 1151.

Here, Plaintiff cites to *Peoples,* discussed above, which is on point. 422 F.3d 1090. As stated above, *Peoples* explains the proposition that a pre-trial detainee may not be punished prior to a lawful conviction and that "[t]he determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose." *Id.* at 1106. In *Peoples*, the plaintiff was a pre-trial detainee who was placed in segregation for thirteen months due at first to a lack of bed space within the detention facility, and subsequently held there because he was found to be an escape threat. *Id.* at 1106. The Tenth Circuit found that the detention center did not violate the plaintiff's due process rights because"[a] substantiated escape threat . . . is a legitimate nonpunitive rationale for [the plaintiff's] continued segregation." *Id.*

As discussed above, Defendants Romero and Jordan's decision to hold Plaintiff in Unit 4D, segregation, as an alternative to placing him in general population, where he was at a heightened risk for assault due to the nature of his charges, is entitled to deference and is in the interest of institutional safety, which is a legitimate nonpunitive rational. *See Bell*, 441 U.S. at 547-48; *Peoples*, 442 F.3d at 1106. However, Defendants' decision to hold Plaintiff in Unit 4D despite Plaintiff's contention that he repeatedly requested to return to Unit 4A, Special Housing, is without a legitimate nonpunitive rationale. Thus, under *Peoples*, the law was clear at the time of Plaintiff's segregation from March to December

2013, that his continued assignment to Unit 4D, segregation, without a legitimate managerial or security concern, was a violation of his constitutional right as a pretrial detainee to be free of punishment. 422 F.3d at 1106-07.

Thus, the Court finds that the constitutional right was clearly established at the time of Defendants' actions. Because Plaintiff has met his burden on both steps of the qualified immunity analysis, Defendants Jordan and Romero are not entitled to qualified immunity. Accordingly, the Court respectfully **recommends** that the Motion [#249] be **denied** with respect to Defendants Romero and Jordan's request for qualified immunity.

## C. Compensatory Damages

The Prison Litigation Reform Act (the "PLRA") provides that "[n]o civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA also applies to pre-trial detainees. *See* 42 U.S.C. § 1997e(h) (defining the term "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law"); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2476 (2015) (explaining that the PLRA "applies to both pretrial detainees and convicted prisoners").

Defendants argue that they are entitled to summary judgment regarding Plaintiff's request for compensatory damages pursuant to the PLRA because Plaintiff has not "alleged, and cannot prove, a prior *physical* injury that resulted from his being placed in administrative segregation." *Motion* [#249] at 18 (emphasis in original). The Fourth Amended Complaint alleges that the actions of Defendants Romero and Jordan "adversely

affected the mental and physical health and well-being of the plaintiff" and that he is seeking "compensatory damages fro [sic] the loss of privileges and quality of life in his county jail living conditions, and loss of the limited liberty enjoyed by the pre-trial detainee." *Fourth Am. Compl.* [#137] at 10-12. Nowhere else does the Fourth Amended Complaint refer to any physical injury suffered by Plaintiff as a result of Defendants' actions. In response to Defendants' argument that they are entitled to summary judgment regarding his compensatory damages requests, Plaintiff relies on the same allegation, but elaborates, stating that

> Plaintiff severely suffered from hearing voices, hallucination, cognitive dysfunction, uncontrollable jumping, severe depression, anxiety, appetite loss, sleep disruption, muscle tightening, panic, traumatic re-enactment of being shot at point blank range, PTSD, continued fear and paranoia, large very painful lump on lower left side rib-cage area. All as a result of his placement in Unit 4D, 23 hour lock-down segregation.

*Response* [#268] at 58.

Evidence in the form of DDC medical records, mental health records, and "private session" notes that Plaintiff provided in response to Defendants' interrogatories demonstrate the mental and emotional injuries that Plaintiff alleges to have suffered. *See Mental Health Progress Notes, Exhibit B* [#237-2]; *Mental Health Progress and Psychiatric Provider Follow-up Forms, Exhibit C* [#237-3] at 2-15; *Inmate Request for Medical Assistance, Exhibit C* [#237-3] at 16 ("I'm really getting my but kick [sic] mentally, my 23 hour isolation is cause [sic] me to lose breath, see things, muscle tightening, blur vision [sic] uncontrollable nervousness, fear"). In one of several Inmate Request for Medical Assistance forms, dated January 1, 2014, Plaintiff identified the nature of his complaint as "mental health," reiterating many of the same injuries he alleges to be "physical" in nature

such as, "having problems with loud noises shortness of breath, muscle tightening, and bad dreams [and] can't stop [his] body from jumping from loud sounds." *Inmate Request for Medical Assistance, Exhibit C* [#237-3] at 20.

Plaintiff's uncontroverted evidence does not demonstrate that Plaintiff suffered a "physical injury" as necessary to support a claim for compensatory damages under 42 U.S.C. § 1997e(e). *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999) ("[A]lthough mental and emotional distress can constitute a compensable injury in suits for damages under 42 U.S.C. § 1983 based upon violations of constitutional rights, § 1997e(e) provides that such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.") (internal quotation marks and brackets omitted). While Plaintiff alleges that he suffered "physical injuries," those delineated by him are not distinct from any mental or emotional injuries that he may have suffered. *See Hughes v. Colo. Dept. of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (explaining that "a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries"); *see also Turner v. Schultz*, 130 F. Supp. 2d 1216, 1223 (D. Colo. 2001) (finding that the plaintiff's allegations that the defendants' actions had caused him "severe emotional distress and loss of enjoyment of life" were not sufficient under the PLRA and therefore, the claims could not stand).

Thus, the uncontroverted evidence does not show that Plaintiff suffered from a "physical injury" due to Defendants' actions and his alleged injuries cannot support claims for compensatory damages pursuant to 42 U.S.C. § 1997e(e). Accordingly, the Court finds that Defendants are entitled to summary judgment in their favor on Plaintiff's requests for

compensatory damages.[8]

## IV. Conclusion

Accordingly, for the reasons stated above,

IT IS HEREBY **RECOMMENDED** that Defendants' Motion [#249] be **GRANTED in part and DENIED in part**. The Court **recommends** that the Motion [#249] be **granted** to the extent that summary judgment be entered in favor of Defendant Clements and with respect to Plaintiff's requests for compensatory damages. The Court **recommends** that the Motion [#249] be otherwise **denied** with respect to Defendants Romero and Jordan, i.e., Plaintiff's Fourteenth Amendment claims against them in their individual capacities seeking punitive damages.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this

---

[8] Should this Recommendation be adopted in full, Plaintiff's request for punitive damages will remain. *See Searles v. Van Bebber*, 251 F.3d 869, 880-81 (10th Cir. 2001) (explaining that "punitive damages may be recovered for constitutional violations without a showing of compensable injury" and that "punitive damages remain available, in the proper circumstances, in prisoner actions under section 1983"); *see also Argetsinger v. Ritter*, No. 08-cv-01990-PAB-KMT, 2009 WL 3201088, at *4 (D. Colo. Sept. 29, 2009) (explaining that "the physical injury requirement of § 1997e(e) only precludes recovery of compensatory damages, not punitive damages").

Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: January 31, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge