IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02406-PAB-KLM

FRANKY L. SESSION,

    Plaintiff,

v.

DEPUTY SHERIFF CAPTAIN ROMERO, in his individual capacity, and
DEPUTY SHERIFF SERGEANT JORDAN, in his individual capacity,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on the Recommendation of the United States Magistrate Judge [Docket No. 427] filed on January 10, 2019. The magistrate judge recommends that the Court grant in part Plaintiff's Motion for Spoliation Sanctions [Docket No. 387] and allow the parties "to present evidence relating to the lost or destroyed Review Board records and to argue whatever inferences they hope the jury will draw from their absence." Docket No. 427 at 15-16. Plaintiff filed a timely objection to the magistrate judge's recommendation on January 17, 2019, Docket No. 434, to which defendants responded on January 23, 2019. Docket No. 438.

**I. BACKGROUND**[1]

This case arises out of plaintiff's pretrial detention at the Denver Detention Center ("DDC") in 2013. Plaintiff asserts that defendants violated his due process rights

---

[1] A more complete recitation of the facts and procedural history can be found in the magistrate judge's report and recommendation. *See* Docket No. 427.

under the Fourteenth Amendment by keeping him in administrative segregation for a period of eight and one-half months without a legitimate reason. Docket No. 300 at 2-3. Plaintiff proceeded *pro se* throughout most of the litigation, but was appointed pro bono counsel in August 2018. Docket No. 352. On September 28, 2018, plaintiff, through pro bono counsel, moved to reopen discovery to seek additional information regarding the DDC's policies and procedures for placing inmates in administrative segregation. Docket No. 364. As a result of defendants' subsequent disclosure of unredacted policy documents, plaintiff learned that defendants were required to keep written records of the Administrative Review Board's weekly reviews of plaintiff's housing placement. *See* Docket No. 376 at 4 n.1 (discussing new categories of documents sought by plaintiff as a result of defendants' production of unredacted Post Orders and DDC regulations); Docket No. 387 at 3 (discussing written records defendants were required to keep regarding plaintiff's housing placement). On November 9, 2018, the Court granted in part plaintiff's request to modify the scheduling order and ordered defendants to produce, within thirty days: "(1) any DDC regulations governing the classification, housing, and/or placement of inmates in Unit 4D during 2013; (2) any records of weekly interviews conducted by an administrative review board Classification officer between March 24, 2013 and December 18, 2013; (3) any DDC weekly administrative board reports dated between March 24, 2013 and December 18, 2013; and (4) any classification review forms for plaintiff, dated between March 24, 2013 and December 18, 2013." Docket No. 376 at 5. On December 17, 2018, plaintiff moved for spoliation sanctions, arguing that defendants had lost or destroyed "weekly interviews and reports" that "they created . . . as part of their duties on the Administrative Review

2

Board (the 'Review Board')." Docket No. 387 at 1. On January 10, 2019, the magistrate judge recommended that plaintiff's motion be granted in part. Docket No. 427 at 1. The magistrate judge found that, although plaintiff had demonstrated both spoliation of relevant evidence and resulting prejudice, he had not made an adequate showing of bad faith to warrant the giving of an adverse inference instruction at trial. *Id.* at 6-15.

## II. STANDARD OF REVIEW

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

In the absence of a proper objection, the Court reviews the magistrate judge's recommendation to satisfy itself that there is "no clear error on the face of the record."[2] Fed. R. Civ. P. 72(b), Advisory Committee Notes.

## III. ANALYSIS

Plaintiff objects to the magistrate judge's report and recommendation to the extent that the magistrate judge found insufficient evidence of bad faith. Docket No. 434 at 1.[3] Plaintiff argues that the "recommendation fails to recognize the significant

---

[2]This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

[3]Notably, plaintiff does not object to the magistrate judge's legal conclusion that a litigant must demonstrate bad faith in order to be entitled to an adverse inference instruction. *See* Docket No. 427 at 12 (discussing ambiguity in Tenth Circuit case law but concluding that plaintiff "must provide evidence of bad faith to be permitted an

3

evidence of bad faith in the record and, in effect, imposes such a high legal standard for showing bad faith that litigants will have license to 'lose' clearly relevant documents long after litigation has commenced." *Id.*

Regarding the issue of bad faith, the magistrate judge determined that, although the evidence presented was "consistent with bungled record-keeping, bungled records management, and extreme carelessness," it did not show that defendants were responsible for the loss or destruction of the weekly Review Board records. Docket No. 427 at 14.

In his objection, plaintiff argues that four factors warrant a finding of bad faith: (1) defendants' violation of DDC's record-keeping requirements; (2) defendants' failure to preserve the Review Board records after the case was filed; (3) defendants' attempts to conceal the Review Board records from plaintiff while he was proceeding *pro se*; and (4) defendants' inability to explain the loss of the Review Board records. Docket No. 434 at 4-9.

With regard to the first factor, plaintiff argues that defendants' failure to maintain electronic records of administrative review board decisions in violation of DDC policy is sufficient evidence, by itself, to warrant a finding of bad faith. Docket No. 434 at 4. Plaintiff relies on *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987), in which the Tenth Circuit held that a plaintiff was entitled to a presumption that certain personnel records would have supported her case because the defendant had destroyed the records in violation of a federal regulation. *Id.* at 1419. Plaintiff argues

---

adverse inference instruction" in this case).

that *Hicks* stands for the proposition "that a violation of policies and procedures can be sufficient evidence alone to show bad faith." Docket No. 434 at 4-5. As defendants point out, however, the court in *Hicks* held that plaintiff was entitled to a presumption notwithstanding the fact that the record did not demonstrate bad faith. *See* 833 F.2d at 1419 n.5. *Hicks* therefore does not support plaintiff's position. This case is also distinguishable from *Hicks* because plaintiff has presented no evidence that defendants themselves were responsible for the loss or destruction of the Review Board records. *See Alvariza v. Home Depot*, 241 F.R.D. 663, 668 (D. Colo. 2007) (distinguishing *Hicks*, where the employer admitted to intentionally destroying documents in violation of a federal regulation, from a situation in which a defendant "agreed to provide certain documents, looked for such documents, and was unable to find them").[4]

Plaintiff also argues that defendants' failure to preserve the Review Board records when litigation was already pending constitutes evidence of bad faith. Docket No. 434 at 5, 8-9. The Court disagrees. While the failure to preserve records after a litigation hold is in place supports the imposition of spoliation sanctions, *see E.E.O.C. v.*

---

[4]While the magistrate judge found that defendants had custody and control over the documents for a certain period of time after this case was filed, Docket No. 427 at 9-11, defendants presented evidence that the documents went missing only after defendants had left the special management unit. *See* Docket No. 418-1 at 12, 109:16-22 (Sergeant Jordan's deposition testimony that copies of the Administrative Review Board records still existed when he left the special management unit in August 2015); Docket No. 418-4 at 2, ¶ 8 (Sergeant Gary Tribble's declaration stating that "the boxes of older Classification documents were still in the Classification office when Captain Romero" retired in June 2017). In his declaration, Sergeant Tribble stated that the Captain of Classification who took over after defendant Romero's retirement in June 2017 directed that the boxes of older Administrative Review Board records be sent to the Imaging Department to be scanned. Docket No. 418-4 at 2, ¶ 9. Sergeant Tribble does not know what happened to the records after they left the Classification office. *Id.*

5

*Jetstream Ground Servs.*, 878 F.3d 960, 964 (10th Cir. 2017) (stating that "spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence" (internal quotation marks and brackets omitted), it does not, standing alone, establish bad faith. To hold otherwise would collapse the spoliation and bad faith inquiries into one and mandate the giving of an adverse inference instruction in every case where evidence is improperly lost or destroyed. Such a result would be inconsistent with Tenth Circuit law. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (explaining that an adverse inference instruction requires proof of bad faith *in addition to* evidence of spoliation).[5]

Plaintiff next contends that defendants' discovery conduct – specifically, their efforts to conceal policy documents that would have revealed the existence of the Review Board records – is indicative of bad faith. Docket No. 434 at 6. Plaintiff bases his argument on defendants' failure to produce three categories of documents: (1) the Review Board records themselves which, plaintiff asserts, were responsive to plaintiff's 2016 request for "[a]ny and all documents . . . created by any Denver Sheriff Staff member or any Denver Sheriff Department or official concerning 'Franky L. Session,'

---

[5]Although plaintiff is correct that *Turner* and *Jetstream* did not involve the loss or destruction of documents after the commencement of litigation, Docket No. 434 at 5-6, neither case mandates a finding of bad faith merely because a party has violated a duty to preserve evidence. *See Jetstream*, 878 F.3d at 965 (noting that the "central debate between the parties on appeal [was] whether [an adverse inference instruction was] proper absent a court finding of bad faith"); *Turner*, 563 F.3d at 1150 (finding that the "record as a whole," including the fact that defendant produced other evidence related to its hiring plan, did not support a finding of bad faith).

from January 22, 2013 to May 20, 2015"; (2) DDC policy documents that would have revealed defendants' record-keeping obligation; and (3) unredacted Post Orders discussing the Review Board records. *Id.* at 6-7.[6] Defendants respond that it was proper for them to redact non-public portions of the DDC Post Orders because plaintiff was a prisoner in the custody of the Colorado Department of Corrections at the time those documents were produced. Docket No. 418 at 13; Docket No. 438 at 12-13. They further contend that the production of the redacted Post Orders in 2016 does not suggest an effort to conceal spoliation, as the evidence indicates that the Review Board records were not lost until 2017. Docket No. 438 at 12-13. Finally, defendants argue that they did not produce the Review Board records in response to plaintiff's request for production because they interpreted the discovery request as being limited to "documentation regarding Plaintiff's housing location history within the DDC." *Id.* at 11.

The Court is not entirely satisfied by defendants' explanation for their failure to produce certain policy documents during discovery. For example, it is not clear why the production of redacted Post Orders in 2016 could not support an inference that defendants were engaged in an ongoing effort to conceal unfavorable evidence that ultimately included the actual destruction of the Review Board records. However, the Court finds that any connection between defendants' discovery conduct and the loss or destruction of the Review Board records is wholly speculative and thus insufficient to satisfy plaintiff's burden of showing bad faith. While plaintiff cites *Adams v. Gateway,*

---

[6]As discussed above, the DDC policy documents and unredacted Post Orders were obtained by plaintiff after he moved, through newly-appointed pro bono counsel, to reopen discovery on September 28, 2018.

7

*Inc.*, 2006 WL 2563418 (D. Utah Mar. 22, 2006), for the proposition that a "pattern of behavior" can constitute circumstantial evidence of bad faith, *see* Docket No. 434 at 2, 9, the evidence of bad faith in that case was substantial. The evidence included an email (the "DeRusso to Holstein email"), which, like the email at issue in the plaintiff's spoliation motion (the "Ma to Woon email"), was not initially disclosed by the defendant. *Adams*, 2006 WL 2563418, at *3. When a complete copy of the DeRusso to Holstein email was finally produced, it contained incriminating information and was "accompanied by a stack of Declarations setting forth information that [the defendant's] employees and attorneys claim they had previously forgotten, but were reminded of by the re-discovered email." *Id.* The court found that "this sequence of events," as well as the defendant's "total inability to account for what became of the crucial Ma to Woon e-mail," constituted sufficient evidence of bad faith spoliation. *Id.*

When compared with the evidence in *Adams*, defendants' failure to produce certain policy documents during discovery is far less suggestive of a "pattern of behavior" aimed at concealing incriminating evidence. Notably, the redacted portions of the DDC Post Orders include a substantial amount of information not related to the DDC's record-keeping policies. *Compare* Docket No. 371-1 at 6-9 (unredacted Post Order), *with* Docket No. 364-1 at 6-9 (redacted Post Order). To the extent plaintiff suggests that the purpose of the redactions was to conceal the existence of the weekly Review Board records, he has provided no explanation for why defendants would have redacted portions of the Post Order unrelated to those records. Similarly, although defendants' failure to produce Review Board records and DDC regulations during

8

discovery may reflect an unduly narrow interpretation of plaintiff's discovery requests, such evidence does not, standing alone, establish that defendants intentionally lost or destroyed evidence. *Cf. Mueller v. Swift*, No. 15-cv-01974-WJM-KLM, 2017 WL 3058027, at *5 (D. Colo July 19, 2017) (expressing a "dim view" of plaintiff's actions in "'cherry picking what he wanted' from the recording, then 'conveniently destroying the multiple copies,'" but finding that the record did not clearly support an intent to deprive defendants of relevant evidence).

Plaintiff's final argument is that defendants' inability to explain the loss of the Review Board records suggests it is "possible that the review board records were destroyed or intentionally lost by Defendants." Docket No. 434 at 8. The magistrate judge correctly found, however, that the mere *possibility* of malfeasance does not satisfy plaintiff's burden of showing bad faith. *See* Docket No. 427 at 15 ("Although it is *possible* that Defendants may have contributed to the loss or destruction of the Review Board records, the evidence demonstrates that it is *probable* on this record that other employees at DDC . . . caused their loss or destruction."); *see also Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015) (noting that a party moving for spoliation sanctions "has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it"); *Alvariza*, 241 F.R.D. at 668 (finding defendants' inability to locate the requested documents "insufficient to support a reasonable inference of intentional destruction . . . let alone an inference of bad faith").

In summary, plaintiff has failed to show that defendants acted in bad faith by

losing or destroying the Review Board records.  This conclusion is further supported by defendants' production of the Review Board records for the week of May 31, 2013 [Docket No. 388-5] and the native Excel spreadsheets [Docket No. 418-2], which undermines an inference of bad faith.  *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (finding that "any inference of bad faith [was] undermined by the other attendance records produced" by the defendant); *see also* Docket No. 418 at 3-4, 8 (explaining purpose of spreadsheets and noting that they contained the "same alert codes as would be reflected in the misplaced paper documents").[7]  Plaintiff's objection to the magistrate judge's recommendation is therefore overruled.

## IV.  UNOBJECTED-TO RULINGS

As for the unobjected-to portions of the recommendation, in the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn,* 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings").  In this matter, the Court has reviewed the unobjected-to portions of the recommendation and satisfied itself that there is "no clear error on the face of the

---

[7]It is not clear why the May 31, 2013 records are available, but the records from the other weeks are not.  *See* Docket No. 418-1 at 17, 162:1-9 (defendant Jordan testifying that he did not know where the only records from 2013 came from).  However, plaintiff makes no argument that the records from May 31, 2013 were selectively produced and instead contends that the records do not support defendants' position.  *See* Docket No. 387 at 7, 10-11 (arguing that the May 31, 2013 Review Board records do not support defendants' story).

record." Fed. R. Civ. P. 72(b), Advisory Committee Notes.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 427] is **ACCEPTED**. It is further

**ORDERED** that Plaintiff's Motion for Spoliation Sanctions [Docket No. 387] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that the parties will be permitted to present evidence at trial relating to the lost or destroyed Review Board records and to argue whatever inferences they hope the jury will draw from their absence.

DATED January 25, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge